# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL F. WILLIAMS and MAKSWILL GROUP CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>YING ZHOU, GUOLIANG TIAN (a/k/a Tony Tian), and JIAHAO INTERNATIONAL GROUP LTD.,<br><br>Defendants. | Civ. No. 2:14-cv-5544-KM-MAH<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff Paul F. Williams ("Williams") is a New Jersey resident and plaintiff Makswill Group Corporation ("Makswill") is a New Jersey corporation with its principal place of business in New Jersey. Defendant Ying Zhou ("Zhou") is a New York resident. Defendant Guoliang Tian, also known as "Tony Tian," ("Tian") is a citizen and resident of Shenzhen, China. Defendant Jiahao International Group ("Jiahao") is a corporation incorporated in Hong Kong with offices in Shenzhen, China.

Now before the court is the Rule 12(b)(2) motion of defendants Zhou, Tian, and Jiahao to dismiss the amended complaint for lack of specific personal jurisdiction. I find that this court has personal jurisdiction over the defendants and thus will deny defendants' motion.

1

## I. BACKGROUND[1]

Plaintiff Williams is a New Jersey resident. (AC ¶ 1). He operates a professional consulting business through Makswill, a New Jersey corporation. (AC ¶¶ 2, 7). Williams is authorized by the Antiguan government to promote and market its Citizenship by Investment Program ("CIP"). (AC ¶ 8). This program permits individuals to obtain Antiguan citizenship by making a monetary investment in the country's economy. (AC ¶¶ 8, 10-11; Tian Aff. ¶ 2).

Defendants contacted Williams on or about March 26, 2014 after having viewed plaintiffs' contact information on the official website of the Antiguan Citizenship by Investment Unit. (AC ¶ 9; Tian Aff. ¶ 5). Plaintiffs claim that Tian and Zhou are partners and co-owners of Jiahao. (AC ¶ 10). Tian and Zhou insist that Zhou is strictly an interpreter, hired through a Chinese-language newspaper ad; Zhou alleges no ownership, involvement or stake in Jiahao beyond working as Tian's translator. (Tian Aff. ¶ 5; Zhou Aff. ¶¶ 3-4, 6-8).

Williams first met Tian and Zhou at a restaurant in New Jersey. (AC ¶¶ 11). Defendants wanted to facilitate applications of Chinese nationals to various jurisdictions throughout the world that offered "economic citizenship." (AC ¶¶ 10, 11). Defendants sought Williams' help negotiating the price for "economic citizenship" through Antigua's CIP. (AC ¶¶ 10, 11). Williams alleges that their meetings in New Jersey and New York led to a "verbal services agreement." (AC ¶ 11).

---

[1] As stated in Section II, for the purposes of a motion to dismiss for lack of personal jurisdiction, the plaintiffs' allegations are accepted as true and disputed facts are construed in favor of the plaintiffs. However, I will examine any evidence presented when factual allegations are discussed.

Citations to the record are abbreviated as follows:

"AC" = Amended Complaint (ECF no. 81)

"Irwin Cert." = Attorney's Certification of Stephen B. Irwin (ECF no. 107) (Not the Attorney's Certification for Defendant Guoliang Tian (ECF no. 107))

"Tian Aff." = Affidavit of Defendant Guoliang Tian (ECF no. 107)

"Zhou Aff." = Affidavit of Defendant Ying Zhou (ECF no. 107)

"Alleged Contract" = Alleged Contract between Plaintiffs and Defendants (ECF no. 107)

2

Under the alleged "verbal services agreement," Williams and Makswill would be intermediaries in official discussions with senior members of the Antiguan government, including the Prime Minister. (AC ¶ 11). Williams and Makswill would be retained as consultants to obtain a discounted price for Tian and Zhou's clients, who would apply for Antiguan citizenship through the CIP. (AC ¶ 11).

Williams and Makswill proceeded to do "extensive work" to negotiate a discounted price for the clients of Tian and Zhou. (AC ¶ 12). Williams and Makswill met and negotiated with government officials, including the Prime Minister of Antigua. (AC ¶ 13). From April 4, 2014 through August 22, 2014, Williams worked for 1,120 hours on behalf of defendants. (AC ¶ 14). Williams traveled to Antigua twice, incurring expenses of approximately $14,500. (AC ¶ 15). On or about August 22, 2014, Williams and Makswill sent the defendants an invoice in the amount of $322,500. (AC ¶ 16). This invoice remains unpaid. (AC ¶¶ 16, 18). Williams and Makswill believe that the defendants have continued to operate and build their business in Antigua by "capitalizing upon the efforts of Plaintiff[s] for which [plaintiffs] were not compensated." (AC ¶ 19).

Defendants deny the existence of a joint venture or "verbal services agreement" with Williams and Makswill. (Irwin Cert. ¶ 5). Defendants argue that there was "a single page conditional contract" drafted by Williams, which was translated into Chinese by Williams's translator. (Irwin Cert. ¶ 10). The alleged "single page conditional contract" states, in full:

> I, Tony Tian, agree to pay to Paul Williams a consultancy fee in the amount of **US$12,000** for each application submitted to the Antiguan Citizenship by Investment Program under the National Development Fund option. This consultancy fee represents compensation for services rendered by Mr. Williams and his company, MAKSWILL GROUP CORPORATION. This fee is contingent upon Mr. Williams negotiating with the Antiguan Government a reduction in the standard contribution to the National Development Fund to an amount of **US$150,000** for each

3

application delivered to the CIP Unit by Mr. Tian and his company prior to June 4, 2014.

**The consultancy fee shall be paid as follows: (1) Upon approval by the Antiguan Government of the reduction in the contribution to the National Development Fund, US$2,000 per application shall be paid immediately to Mr. Williams with each application submitted to the CIP Unit; (2) The remainder of the fees (US 10,000 per application) shall be paid to Mr. Williams at the same time the applicants submit their full contribution to the Fund after they have been approved by the Government for citizenship.**

(Alleged Contract).

Williams and Makswill seek payment of the $322,500 invoice, alleging breach of contract, unjust enrichment, and quantum meruit. (AC ¶¶ 20-37). Defendants argue that this court lacks personal jurisdiction over them.

## II. LEGAL STANDARDS

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007). Initially, a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Where factual allegations are disputed, however, the court must examine any evidence presented. *See, e.g., Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) ("'A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.'" (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

The plaintiff "need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). However, a plaintiff may not "rely on the bare pleadings alone" in order to withstand a motion to dismiss for lack of personal jurisdiction. *Patterson*, 893 F.2d at 604 (citation omitted). "Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Id.* (citing *Time Share Vacation Club*, 735 F.2d at 66 n.9).

To assess whether it has personal jurisdiction over a defendant, a district court must undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). First, the court is required to use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.*; Fed. R. Civ. P. 4(k). "Second, the court must apply the principles of due process" under the federal Constitution. *WorldScape, Inc. v. Sails Capital Mgmt.*, No. 10-cv-4207, 2011 WL 3444218, at *3 (D.N.J. Aug. 5, 2011) (citing *IMO Indus.*, 155 F.3d at 259).

In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

There are two kinds of personal jurisdiction that allow a district court to hear a case involving a non-resident defendant: general and specific. A court may exercise general jurisdiction over a foreign corporation where "the defendant's contacts with the forum are so 'continuous and systematic' as to render them essentially 'at home' in the forum state." *Senju Pharm. Co., Ltd. v.*

5

*Metrics, Inc.*, 96 F. Supp. 3d 428, 435 (D.N.J. 2015) (citing *Daimler AG v. Bauman*, — U.S. —, 134 S. Ct. 746, 754 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

In contrast to general jurisdiction, specific jurisdiction relies on the defendant's forum-related activities that give rise to the plaintiffs' claims. *See Helicopteros*, 466 U.S. at 414 & n.8. Establishing specific jurisdiction requires a three-part inquiry: (A) whether there is purposeful availment—i.e., whether the defendant purposefully directed its activities at the forum; (B) whether there is relatedness—i.e., whether the litigation arises out of or relates to at least one of the contacts; and, if the first two requirements are met, (C) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). The defendant need not be physically located in the state while committing the relevant acts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80 (1984). Even a single act may satisfy the minimum contacts test if it creates a substantial connection with the forum. *Burger King*, 471 U.S. at 475 n.18.

### III. DISCUSSION

Plaintiffs concede that this court cannot exercise general jurisdiction over the defendants. Zhou and Tian are not residents of New Jersey and were not served while in New Jersey. *See Burnham v. Superior Court of California*, 495 U.S. 604, 610-13 (1990). Jiahao lacks the "continuous and systematic" New Jersey contacts that would support general jurisdiction. *See Helicopteros*, 466 U.S. at 414-15 & n.9. I therefore address whether this court can exercise specific jurisdiction over the defendants.

As stated above, establishing specific jurisdiction requires a three-part inquiry: **(A)** purposeful availment; **(B)** relatedness; and **(C)** whether the exercise

6

of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317.

### A. Purposeful Availment Requirement

I first look to "purposeful availment," i.e., whether the defendants purposefully directed their activities at the forum state of New Jersey. *O'Connor*, 496 F.3d at 317. A defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Defendants argue that they have no substantial connection to New Jersey; they allege that they had one meeting with Williams in New Jersey and otherwise have no other contacts with the state. (Tian Aff. ¶ 7; Zhou Aff. ¶ 5). Tian states that he has never advertised or solicited business in New Jersey. (Tian Aff. ¶ 6). Tian and Jiahao do not have any offices in New Jersey. (Tian Aff. ¶ 6). Zhou allegedly lives and works in New York. (AC ¶ 3; Zhou Aff. ¶ 2).

However, various forms of communications between parties, including written correspondence, telephone calls, and emails, may properly factor into the minimum contacts analysis. *See Grant Entm't Grp., Ltd. v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir. 1993) (finding that written correspondence and phone calls may count toward minimum contacts regarding foreign defendants); *George Young Co. v. Bury Brothers, Inc.*, No. 03-cv-3353, 2004 WL 1173129, at *5 (E.D. Pa. Apr. 2, 2004). "[W]hen the plaintiff can proffer evidence of a defendant deliberately directing mail, telephone, and/or email communications to the forum state," then a finding of personal jurisdiction may be proper. *Arthur Schuman, Inc. v. Banco Santander Brasil, S.A.*, No. 06-cv-1331, 2008 WL 320430, at *5 (D.N.J. Jan. 30, 2008) (citing *Grand Entm't*, 988 F.2d at 482).

For example, in *Carteret Savings Bank, FA v. Shushan*, the Third Circuit held that telephone calls and correspondence sent into New Jersey from Louisiana by the representative of a Louisiana real estate developer, coupled with a meeting in New Jersey to facilitate the closing of a loan, provided the

7

minimum contacts needed to satisfy due process. 954 F.2d 141, 146-48 (3d Cir. 1992).

In *O'Connor, supra,* the Third Circuit held that a Barbados defendant "deliberately reached into Pennsylvania to target two of its citizens" when it "mailed [plaintiffs] a brochure and traded phone calls with them for the purpose of forming an agreement to render spa services" in Barbados. 496 F.3d at 318. The Court found that "[t]hrough these acts," the Barbados defendant had purposefully availed itself of the privilege of doing business in Pennsylvania. *Id.*

In this case, defendants made several communications that were directed at the forum state of New Jersey. Defendants initiated contact with Williams about the Antigua CIP. (AC ¶ 9; Tian Aff. ¶ 5; Zhou Aff. ¶ 4). They set up a meeting with Williams at a New Jersey restaurant near Williams's home to discuss the program. (AC ¶ 11; Irwin Cert. ¶ 8; Tian Aff. ¶ 7; Zhou Aff. ¶ 5). Defendants also sent emails about the Antigua CIP to Williams, who was in New Jersey. (ECF no. 111-8). According to Tian, defendants sent the operative contract to Williams in New Jersey. (Tian Aff. ¶ 9).[2]

These contacts, considered one at a time, are hardly overwhelming. Taken together, however, they are sufficient to satisfy the "purposeful availment" requirement. Like the defendant in *Carteret Savings Bank,* defendants directed communications at New Jersey and visited New Jersey. *See* 954 F.2d at 149; *see also Barrett v. Catacombs Press,* 44 F. Supp. 2d 717, 729 (E.D. Pa. 1999) ("While telephone and mail contacts with residents of the

---

[2] Defendants argue that plaintiffs need to submit "actual proofs" and not "mere allegations" of personal jurisdiction. (ECF no. 115 ¶ 4). It is true that plaintiffs may not "rely on the bare pleadings alone" to withstand a motion to dismiss for lack of personal jurisdiction. *Patterson,* 893 F.2d at 604 (citing *Time Share Vacation Club,* 735 F.2d at 66 n.9). In this case, however, plaintiffs have shown phone and email records. (ECF nos. 111, 117). Moreover, defendants admit to the contacts on which personal jurisdiction is based. Defendants admit that they sent communications to New Jersey to contact Williams, met with Williams in New Jersey, and then continued to send communications to New Jersey as part of a working relationship with Williams. (Irwin Cert. ¶¶ 4-5; Tian Aff. ¶¶ 6-7, 9; Zhou Aff. ¶¶ 4-5). Those facts at least are undisputed.

8

forum state can be enough to subject a defendant to jurisdiction, such cases include other indications of a substantial connection. In *Carteret Savings*, for example, in addition to telephoning and corresponding with his client, the Louisiana lawyer also traveled to New Jersey to visit his client."). These contacts demonstrate that defendants purposefully directed their activities to New Jersey.

### B. Relatedness Requirement

Second, I must determine whether the contacts meets the "relatedness requirement"—i.e., whether this litigation arises out of or relates to at least one of the defendants' contacts with New Jersey. *O'Connor*, 496 F.3d at 317.

> [S]pecific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test.... [T]here is no "specific rule" susceptible to mechanical application in every case. But in the course of this necessarily fact-sensitive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests. With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. Specific jurisdiction is the cost of enjoying the benefits.
>
> The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.

*Id.* at 323 (internal citations omitted) (paragraph breaks added).

Thus, specific jurisdiction often hinges upon the relationship between the defendant's contacts with the forum and whether the litigation arises out of—or at least relates to—the defendant's contacts with the forum. *Id.* at 317. For instance, there would probably not be specific personal jurisdiction if defendants had sent personal emails to one New Jersey resident, but was sued by other New Jersey residents on an unrelated claim. *See Carrabba v. Morgat*,

9

No. 2:12-cv-6342, 2014 WL 229280, at *5 (D.N.J. Jan. 17, 2014). Although purposeful availment might be present, relatedness would be lacking. *Id.* On the other hand, a single email exchange might support jurisdiction if that very communication gave rise to the cause of action. *Id.* This case is close to the second scenario. The defendants sent a communication—several, in fact—into New Jersey and arranged an in-person meeting in New Jersey that allegedly started a business relationship. That alleged business relationship is now the subject of this litigation.

The contacts in this case specifically pertained to the Antigua CIP and the working relationship between plaintiffs and defendants. Defendants sent communications to New Jersey to contact a New Jersey resident about a business opportunity, went to New Jersey to meet the New Jersey resident, and then continued to send communications to New Jersey to facilitate an alleged business relationship. Additionally, defendant Tian claims that he signed a contract and sent it to Williams. (Tian Aff. ¶ 9); (Alleged Contract). Tian therefore allegedly sent a contract to New Jersey. Defendants thus concede the existence of at least one significant contact directed at New Jersey. Whether this alleged contract governs these parties' relationship—or whether an alleged "verbal services agreement" governs—is the key dispute between the parties, but that dispute does not vitiate personal jurisdiction.

I find that defendants' communications and visit with Williams satisfies the relatedness requirement. Given the defendants' contacts directed at New Jersey, it is reasonable and foreseeable that a claim arising from those contacts would be asserted against defendants in New Jersey.

### C. Fairness Requirement

Third, I must determine whether these contacts satisfy the overall "fairness requirement," i.e., whether exercising jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor*, 496 F.3d at 317.

10

> The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King*, 471 U.S. at 477; *see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir.1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.").

*Id.* at 324. As the Supreme Court has stated, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 114 (1987).

For instance, the Third Circuit held that Pennsylvania had a "manifest interest in providing effective means of redress" when a Barbados company reached into Pennsylvania by sending brochures and making phone calls, solicited Pennsylvania citizens to travel to Barbados, and those citizens were injured in Barbados. *O'Connor*, 496 F.3d at 325 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). The burdens on the Barbados company were "substantial." *Id.* They had to travel 2,000 miles to defend themselves in a foreign legal system in Pennsylvania. *Id.* at 324-25. There were also reasons of fairness weighing in favor of adjudicating the case in Barbados. Most of the witnesses were in Barbados and Barbados had its own "substantive interest" in determining the rights and liabilities of its own domestic corporations. *Id.* Nonetheless, the Third Circuit held that subjecting the Barbados company to personal jurisdiction in Pennsylvania did not offend traditional notions of fair play and substantive justice. *Id.* at 325.

The task before the court is not to select the "best" forum for plaintiffs or defendants; it is only to disallow litigation in a forum that does not meet minimal constitutional standards of personal jurisdiction. Defendants do not

11

present, and I do not see, a compelling case that litigating in New Jersey would be unreasonable and unfair, given the acts and expectations of the parties discussed above. While it may be a burden for Tian and Jiahao to litigate in New Jersey, New Jersey has a "manifest interest" in providing an effective means of redress against defendants.

Applying factors A, B, and C, then, I find that the court possesses personal jurisdiction over the defendants.

### IV. CONCLUSION

For the foregoing reasons, I find that this court possesses personal jurisdiction over the defendants, Tian, Zhou, and Jiahao. Defendants' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) is therefore denied.

An appropriate order accompanies this opinion.

Dated: January 30, 2018

**KEVIN MCNULTY**
**United States District Judge**